IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Monica Rogina | ) | |
| individually | )The Honorable | |
| and on behalf of all persons | ) | |
| similarly situated | ) CASE NO 24 CV 7348 | |
| as | ) | |
| members of the Collective as permitted | ) | |
| under the Fair Labor Standards Act; | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| Carnivore & The Queen LLC., | ) | |
| d/b/a Carnivore and The Queen | ) | |
| Kelli Lodico-Matus, Chris Matus | ) **JURY TRIAL DEMANDED** | |
| as individuals | ) **ON ALL COUNTS** | |
| under FLSA and Illinois Wage Laws | ) | |
| Defendants. | ) | |

**PLAINTIFF'S**
**COLLECTIVE ACTION COMPLAINT**

NOW COMES the Plaintiff, Monica Rogina, individually and on behalf of all others similarly

situated, as a collective representative, by and through her undersigned counsel of record, upon

personal knowledge as to those allegations in which she so possesses and upon information and

belief as to all other matters, pursuant to §216(b) of the Fair Labor Standards Act (hereinafter

"FLSA"), the Illinois Minimum Wage Law 820 ILCS 105/1 *et seq* (hereinafter "IMWL" ), and

the Illinois Wage and Payment Collection Act (hereinafter IWPCA) and brings these causes of

action against Carnivore & The Queen LLC., d/b/a Carnivore and The Queen (Hereinafter

referred to as "CTQ"), and against Individual Defendants Kelli Lodico-Matus and Chris Matus as

individuals under FLSA and Illinois Wage Laws and in so doing states the following:

1

**NATURE OF THE ACTION**

1. Plaintiff, Monica Rogina, alleges individually and on behalf of the Plaintiffs and other similarly situated current, former and future employees of the Defendant CTQ, (Hereinafter references to "Plaintiff" are inclusive of the Individual Plaintiff and those employees that are similarly situated to the Individual Plaintiff) that she, under both federal and state wage laws, is entitled to be paid for all hours worked, to receive minimum wage for all hours worked, overtime rate of pay for all overtime hours and to be paid all her earned tips.

2. Plaintiff worked for Defendants for approximate 8 months as a server being paid on a tip credit rate of $7.80 per hour and earning tips. However, often the Defendants did not distribute to the Plaintiff anywhere close to the tips she actually earned; rather Defendants retained the earned tips of Plaintiff and/or Defendants used them for their own purposes in violation of state and federal law.

3. For a few examples to illustrate the Defendants' tip thefts Plaintiff cites the pay period of May 1-7, 2023 during which Plaintiff was paid $550.88 by Defendants. However, Plaintiff had earned $1,014.88 in tips. Thus clearly the Plaintiff's tip wages were stolen and retained by Defendants in the approximate amount of $464.00 of her tips.

4. Defendants' policy of tip theft occurred again during the pay period of June 12-18, 2023 where Plaintiff was paid $553.06 but she actually earned $1,213.03 in tips alone. Thus clearly the Plaintiff's tip wages were stolen and retained by Defendants in the amount of approximately $658.97.

5.  This tip theft was repeated yet again during the weeks of June 26-July 2, 2023 where Plaintiff was paid $530.74 but actually earned $959.74; resulting in Defendants retaining approximate $429.00 in Plaintiff's wages.

6.  These are only a few examples of tip deficiencies that Plaintiff experienced in the months that Plaintiff worked for Defendants.

7.  Defendants tip thefts are not legal as per 29 C.F.R. §§ 778.307, 531.37(a); WH Opn Ltr No. 1291 (Oct. 1, 1973) and Illinois Department of Labor Regulations.

8.  Further the IWPCA has been amended to specifically require payment to employees all earned tips.

9.  The IWPCA tips section reads:

    ```
    820 ILCS 115/4.1)
        Sec. 4.1. Gratuities.
        (a) Gratuities to employees are the property of
    the employees, and employers shall not keep
    gratuities. Failure to pay gratuities owed to an
    employee more than 13 days after the end of the pay
    period in which such gratuities were earned
    constitutes a violation of this Act.
    ```

10. While the Defendants operated a tip pool, wherein hosts and bartenders receive a small percentage of server tips, this does not account for these massive shortages/thefts from Plaintiff's earned tips.

11. Clearly the Defendants operates an unlawful tip theft scheme that invalidates any claim that the tip pool is valid and/or accounts for the missing tips and, thus, the tip credit benefit utilized by the Company is improper and/or void.

## FLSA/IWML/IWPCA RETALIATION

12. To make matters worse, when Plaintiff sought to correct the theft of her wages by complaining about the missing tips she was retaliated against by Defendants.

13. In August of 2023 Plaintiff complained to the owner Chris Matus that her paychecks did not actually reflects the tips that she had earned.

14. In response, the owner/manager Chris Matus retaliated by first reducing Plaintiff's work hours and eventually removing her from the schedule entirely, effectively terminating her employment in retaliation for asking for her earned and owed wages.

15. The FLSA, IMWL and the IWPCA prohibit retaliation against employees for making complaints of wage violations.

16. This is precisely what happened here: when Plaintiff complained about her wages being stolen, her hours were reduced and she was terminated.

17. Plaintiff was damaged as a result of the unlawful termination via lost wages, distress at a termination and additional costs, such as travel expenses (mileage), related to a job search.

18. If any claim is found correct and proven, the Defendants will be required to pay the following:

    a. Pay back the tips taken,

    b. Pay the difference from the tip rate of pay and the applicable minimum wages for all hours worked for the last three years for all the servers in the Collective,

    c. Pay all associated penalties to Plaintiff and collective members:

        i. FLSA Liquidated Damages,

        ii. 2% per month IMWL penalties,

4

     iii.   5% per month IMWL penalties,

     iv.   5% per month IWPCA penalties,

     v.   IMWL treble damages

  d.   Fees and costs.

19. This action is also brought as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, 207 and 216(b) to recover tips and unpaid minimum wages and overtime wages.

20. Plaintiff's federal FLSA claims are brought as "opt-in" collective action claims pursuant to the FLSA.

21. Plaintiff requests injunctive and declaratory relief, and compensation and credit for all uncompensated work required, suffered, and/or permitted by Defendants, liquidated and/or other damages as permitted by applicable law, restitution and payment of all benefits Defendants obtained from their unlawful business practices and attorneys' fees and costs.

## JURISDICTION AND VENUE

22. This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331 and 1337 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C 1332 and 1367. This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331 based on 29 U.S.C. 216(b) known as the Fair Labor Standards Act.

23. This court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C 1332 and 1367 and Plaintiff seeks application of the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* ("IMWL")

24. The Court is authorized to issue a declaratory judgment.

5

25. Venue is proper in this Court.

26. Defendants do business and are residents of this District and Division of Federal Court.

## ENTERPRISE JURISDICTION

27. Plaintiffs allege Enterprise Jurisdiction, as Defendants are sufficient size to engage in commerce.

28. Defendants has a very successful restaurant in the western suburbs of Chicago employing a staff consisting of 5-10 waitstaff/barstaff at any one time.

29. Thus Plaintiffs allege, given the busy location and large staff, that Defendants have sales of at least $500,000 per year.

30. Defendants' operations exceed sales of $500,000.00.

31. Defendants, are enterprises that regularly and recurrently have at least two employees engaged in commerce.

## INDIVIDUAL FLSA COVERAGE

32. In the alternative, Plaintiff also alleges individual FLSA Coverage.

33. Defendants are also covered under individual coverage of the FLSA.

34. Even when there is no enterprise coverage, employees are protected by the FLSA if their work regularly involves them in commerce between States ("interstate commerce"). The FLSA covers individual workers who are "engaged in commerce or in the production of goods for commerce."

35. Here Plaintiff and Collective sold products to ultimate consumers that traveled in commerce.

6

36. The items that Plaintiff and collective sold include food items such as beer, liquor, wines, (including from California, France and Italy), seafood (including lobster, shrimp, crab and oysters), meat, vegetables, sausage, breads, soft-drinks and juices from other states in America and from other countries/overseas or outside of the United States.

37. Plaintiff's (and collectives) selling of out of state items of commerce is demonstrated by Defendants' list of beers and liquors, most of which are made outside of the state of Illinois and sold within this state (by Defendants and Plaintiff and collective) thus having traveled in Commerce.

## FACTS REGARDING THE PLAINTIFF AND DEFENDANTS

38. Plaintiff Monica Rogina was employed by Defendant Carnivore & The Queen LLC., d/b/a Carnivore and The Queen as a server/waitstaff employee.

39. Plaintiff was classified by CTQ as an Non-Exempt/hourly employee.

40. Plaintiff was paid a "tip-rate" of pay based on Plaintiff earning tips paid from customers.

## CORPORATE FACTS

41. Defendant Carnivore & The Queen LLC., d/b/a Carnivore and The Queen., is a corporation or business which does business in Illinois.

42. Carnivore & The Queen LLC., d/b/a Carnivore and The Queen., operates a restaurant/bar in Downers Grove, Illinois.

43. Defendant Carnivore & The Queen LLC., d/b/a Carnivore and The Queen., employs a staff of some full-time employees and a larger number of part time employees.

44. Kelli Lodico-Matus and Chris Matus are the owners and/or operators of Carnivore & The Queen LLC., d/b/a Carnivore and The Queen.

45. Defendants Kelli Lodico-Matus and Chris Matus is named as Defendant pursuant to the FLSA, IWPCA and IMWL as they are the managers and owners with the ultimate decision making authority for the various wage violations.

46. As owners and managers of the Corporate Defendant, Kelli Lodico-Matus and Chris Matus had the power to hire, fire and discipline employees and actually exercised that power of hiring, firing and discipline on most Defendants employees including firing Plaintiff for asking for her wages.

47. As owner and manager of the Corporate Defendant, Kelli Lodico-Matus and Chris Matus caused the wage violations either by directly creation and enforcement of the tip deduction policy.

48. Defendants Kelli Lodico-Matus and Chris Matus exercise day to day control of operations and was directly involved in the payment (and shortage) of wages to the employees via handling or overseeing the payroll and implementation of the tip deduction.

49. For judicial efficiently Plaintiff asks the court to consider these above individual liability allegations incorporated in the Plaintiff's Counts found below.

**The FLSA Collective Action**

50.     Plaintiff bring claims for relief for violation of the FLSA as a collective action pursuant to Section 16(b) of the FLSA (29 U.S.C. § 216(b)), on behalf of all waitstaff/bartenders of Carnivore & The Queen LLC., d/b/a Carnivore and The Queen who worked during the period of three (3) years prior to the date of commencement of this action through the date of judgment in this action, who:

   a.  Had tips taken in excess of tip regulations.

   b.  Were not paid minimum wages, due to tip deductions/theft.

51.     FLSA violation claims are brought and maintained as an "opt-in" collective action pursuant to § 16(b) of FLSA, 29 U.S.C. § 216(b), for all FLSA claims asserted by the Plaintiff, since the FLSA claims of the Plaintiff are similar to the FLSA claims of all server employees employed by Defendants.

52.     Defendants are liable for improperly compensating Plaintiff and FLSA Collective under the FLSA, and as such notice should be sent to the FLSA Collective. There are numerous similarly situated current and former servers of Defendant who have been denied proper payment of the tips/wages. These current, former and future servers/bartenders would benefit from the issuance of a court supervised notice of the present lawsuit and the opportunity to join in the present lawsuit. The similarly situated servers/bartenders are known to Defendant and are readily identifiable through Defendant's records.

**STATEMENT OF FACTS**

**A.     Defendants' policies and procedures and Compensation Practices fail to pay proper overtime rate of pay and/or Minimum Wage and/or take tips which are wages of Plaintiff and Collective**

9

53. Plaintiff was employed by Carnivore & The Queen LLC., d/b/a Carnivore and The Queen as employees and Defendants took Plaintiff's tips in violation of tip regulations.

54. Plaintiff and all servers/bartenders working for Defendants worked as hourly non-exempt employees.

## DEDUCTIONS VIOLATE THE TIP RATE REGULATIONS

55. In addition to the violations for the deductions, the deductions have a much larger effect on Plaintiff's claims, in that the deductions violate the tip rate regulations.

56. Defendants pay Plaintiff $7.80 per hour plus some tips.

57. To be allowed to maintain pay employees at a "tip rate" Defendants must fulfill ALL the requirements for tip rate pay.

58. One of the regulations that Defendants must follow is that the employees must receive *all* their earned tips.

59. Via the deductions the servers at not receiving all their earned tips.

60. Here the Defendants 40-50% tip deductions takes money from Plaintiff's tips beyond what is permitted under FLSA/IMWL/IWPCA regulations.

61. In the Alternative, if the Defendant claims the tips are not taken via the deductions, the Defendants deductions violate the tip regulations by not paying the required tip rate of pay.

### Defendants' Actions were Willful, Knowledgeable and/or Had Reckless Disregard for FSLA Regulations

62. Defendants unlawful conduct has been uniform, widespread, repeated and consistent.

63. Defendants willful violations are especially demonstrated by their knowledge that its employees were not paid the correct rate of pay and/or that the Defendants were taking the Plaintiffs' and classes tips.

64. All allegations and claims alleged herein should be read in the alternative, to the extent such an interpretation is necessitated by law and permitted under Federal Law, Illinois Law and other state laws.

65. All allegations plead herein are plead with personal knowledge as to those allegations to which Plaintiffs have such knowledge and based upon "information and belief" as to all other allegations.

## FIRST CLAIM FOR RELIEF
**Individual Action Against Defendant**
**Under the Illinois Minimum Wage Law "IMWL"**

66. Plaintiff  realleges and incorporates by reference all the preceding paragraphs, as if fully set forth herein.

67. Plaintiff pleads these specific claims:

   a. That Plaintiffs were not paid minimum wage, due to deductions which reduce the Plaintiff wages below the minimum wage for servers under IMWL.

   b. In the alternative, if the deductions were taken from the Plaintiff tips, this is a violation of IMWL (and by incorporation FLSA) tip regulations.

   c. All the above are plead as violations of IMWL (and by incorporation FLSA).

68. Plaintiff was an employee of the Defendants pursuant to the IMWL.

69. It is and was at all relevant times, a policy of Defendants to pay its employees at an overtime rate of pay and/or minimum wage pursuit to the Defendants' improper deduction policy and procedures and/or Tip rate violations.

70. The Defendants unlawful conduct was and is not inadvertent, de minimis, isolated or sporadic, but widespread, repeated and part of a pattern and practice of conduct affecting most if not all of the Defendant's employees.

71. As a result of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial.

72. Illinois law contains a three-year statute of limitations regardless of whether the violation was willful. 820 ILCS 105/12(a) and Plaintiffs bring claims for all three years applicable to the IMWL.

73. Corporate Defendant employed more than four employees in the state of Illinois.

## SECOND CLAIM

**On Behalf of Plaintiff and All Opt-In Employees
Against Defendants
As a Collective Action
(FLSA Claims, 29 U.S.C. § 201 et seq.)**

74. Plaintiff realleges and incorporates by reference all the preceding paragraphs, as if fully set forth herein.

75. Plaintiff pleads specific claims as found elsewhere in this complaint

76. The Collective claims include all plead claims found in this complaint which fall within the coverage of FLSA.

77. At all relevant times, Defendant has been, and continues to be, an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendants has employed, and continues to employ, "employee[s]," including the Plaintiffs, and each of the members of the FLSA Opt-Ins, that have been, and

continue to be, engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendants has had gross operating revenues in excess of Five Hundred Thousand and no/100 Dollars ($500,000.00).

78. At all relevant times, Defendants has engaged, and continue to engage, in a willful policy, pattern, or practice of requiring their employees, including the Plaintiffs and members of the prospective FLSA Class, to work in excess of forty (40) hours per week without compensating such employees to pay its employees at an overtime rate of pay which does not include the added compensation earned as commissions or earned bonuses.

79. At all relevant times, the work performed by employees including the Plaintiffs and prospective FLSA Opt-Ins, employed at Defendant were, and continue to be, required or permitted by Defendants, for the benefit of Defendants, directly related to such employees' principal employment with Defendants, and as an integral and indispensable part of such employees' employment of Defendants.

80. As a result of the Defendants willful failure to record or compensate its employees – including Plaintiffs and members of the prospective FLSA Class – employed by Defendants for all hours worked, Defendants have violated, and continues to violate, the maximum hours provision of the FLSA, 29 U.S.C. § 207(a)(1), and § 215(a).

81. As a result of the Defendants' willful failure to record, report, credit, and/or compensate its employees employed by Defendant, including the Plaintiffs and members of the prospective FLSA Class, Defendants have failed to make, keep and preserve records with respect to each of their employees sufficient to

determine the wages, hours and other conditions and practices of employment in violation of the FLSA, including 29 U.S.C. §§211(c) and §§ 215(a).

82. The foregoing conduct, as alleged, violated the FLSA, 29 U.S.C. §§ 201 et seq.

83. Plaintiff, on behalf of herself and all FLSA Opt-Ins, seek damages in the amount of their respective unpaid compensation, plus liquidated damages, as provided by the FLSA, 29 U.S.C. § 216(b), and such other legal and equitable relief as the Court deems just and proper.

84. Plaintiff, on behalf of herself and all FLSA Opt-Ins, seek recovery of attorneys' fees and costs of action to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

85. Plaintiff has consented to be a party to this action, pursuant to 29 U.S.C. § 216(b).

86. At all times relevant to this action, Plaintiff and all FLSA Opt-Ins were employed by Defendants within the meaning of the FLSA.

87. At all times relevant to this action, Plaintiff and all FLSA Opt-Ins were engaged in commerce and/or the production of goods for commerce and/or Defendant were an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

88. Due to Defendants' FLSA violations, Plaintiff and all FLSA Opt-Ins are entitled to recover from Defendant their unpaid compensation, an additional equal amount as liquidated damages, additional liquidated damages for unreasonably delayed payment of wages, reasonable attorneys' fees, and costs of the action, pursuant to 29 U.S.C. § 216(b)§ 6 of the Fair Labor Standards Act, 29 U.S.C.A. § 206, 9 FCA title 29, § 206, provides that every employer shall pay to each of his employees

14

who is engaged in interstate or foreign commerce or in the production of goods for such commerce, wages at specified hourly rates.

89. Individual Defendants are named as an employers, as they knowingly permitted violations of the FLSA, as alleged elsewhere in this complaint.

90. Defendants failed to maintain records of the Plaintiff and collectives earned tips, the alleged tip pool(s) and/or deductions from the earned tips of the Plaintiff and collective.

## THIRD CLAIM

### Individual Action Against Defendants
### Under Illinois Wage Payment and Collection Act "IWPCA"

91. Plaintiff realleges and incorporate by reference all the preceding paragraphs, as if fully set forth herein.

92. Pursuant to the IWPCA, Plaintiff pleads the following

   a. That there was no "Agreement" to allow for deductions by Plaintiff, as the deductions were not made freely and without compulsion.

   b. In the alternative, if there is an "agreement" to allow for deductions, that the agreement was violated by Defendants by not taking deductions consistent with that alleged agreement

   c. Plaintiffs had deductions taken without contemporaneous written authorizations as required by the IWPCA.

   d. That Plaintiff was not paid for all earned tips as required by the IWPCA.

93. Plaintiff was employed by Defendants.

15

94. It is and was at all relevant times, a policy of Defendants to take, without Agreement Plaintiff's tips.

95. The Defendants unlawful conduct was and is not inadvertent, de minimis, isolated or sporadic, but widespread, repeated and part of a pattern and practice of conduct affecting all Defendants' employees.

96. This cause of action arises out of IWPCA agreements; written and/or oral.

97. The Defendants unlawful conduct was and is not inadvertent, de minimis, isolated or sporadic, but widespread, repeated and part of a pattern and practice of conduct affecting all Defendants' employees.

98. Plaintiffs are or were under the control and direction of the owner of the Defendant and/or his agents during the period of the Plaintiff employment under their contracts of service and in fact.

99. Plaintiff was not an independent contractors, rather were employees of the Defendant by oral IWPCA agreement.

100. Plaintiff's employment were in the usual course of business for which such service is performed.

101. Plaintiff does not possess a proprietary interest in the Defendant.

102. The Defendant is an "employer" under the terms of the IWPCA section 2.

103. In accordance with IWPCA, an employer is also defined as: "any officer of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation".

16

104. Individual Defendants are named as an employers, as they knowingly permitted violations of the IWPCA, as alleged elsewhere in this complaint.

## FOURTH CLAIM

### Individual Retaliation Claim Against Defendants
### Under Illinois Wage Payment and Collection Act "IWPCA"

105. Plaintiff realleges and incorporate by reference all the preceding paragraphs, as if fully set forth herein.

106. Plaintiff sought to correct the theft of her wages by complaining about the missing tips she was retaliated against by Defendants.

107. In August of 2023 Plaintiff complained to the owner Chris Matus that her paychecks did not actually reflects the tips that she had earned.

108. In response, the owner/manager Chris Matus retaliated by first reducing Plaintiff's work hours and eventually removing her from the schedule entirely, effectively terminating her employment in retaliation for asking for her earned and owed wages.

109. The IWPCA prohibit retaliation against employees for making complaints of wage violations.

110. This is precisely what happened here: when Plaintiff complained about her wages being stolen, her hours were reduced and she was terminated.

111. Plaintiff was damaged as a result of the unlawful termination via lost wages, distress at a termination and additional costs, such as travel expenses (mileage), related to a job search.

## FIFTH CLAIM

### Individual Retaliation Claim Against Defendants
### Under Illinois Minimum Wage Law

112. Plaintiff realleges and incorporate by reference all the preceding paragraphs, as if fully set forth herein.

113. Plaintiff sought to correct the theft of her wages by complaining about the missing tips she was retaliated against by Defendants.

114. In August of 2023 Plaintiff complained to the owner Chris Matus that her paychecks did not actually reflects the tips that she had earned.

115. In response, the owner/manager Chris Matus retaliated by first reducing Plaintiff's work hours and eventually removing her from the schedule entirely, effectively terminating her employment in retaliation for asking for her earned and owed wages.

116. The IMWL prohibits retaliation against employees for making complaints of wage violations.

117. This is precisely what happened here: when Plaintiff complained about her wages being stolen, her hours were reduced and she was terminated.

118. Plaintiff was damaged as a result of the unlawful termination via lost wages, distress at a termination and additional costs, such as travel expenses (mileage), related to a job search.

## SIXTH CLAIM

### Individual Retaliation Claim Against Defendants
### Under FLSA

119. Plaintiff realleges and incorporate by reference all the preceding paragraphs, as if fully set forth herein.

120. Plaintiff sought to correct the theft of her wages by complaining about the missing tips she was retaliated against by Defendants.

121. In August of 2023 Plaintiff complained to the owner Chris Matus that her paychecks did not actually reflects the tips that she had earned.

122. In response, the owner/manager Chris Matus retaliated by first reducing Plaintiff's work hours and eventually removing her from the schedule entirely, effectively terminating her employment in retaliation for asking for her earned and owed wages.

123. The FLSA prohibit retaliation against employees for making complaints of wage violations.

124. This is precisely what happened here: when Plaintiff complained about her wages being stolen, her hours were reduced and she was terminated.

125. Plaintiff was damaged as a result of the unlawful termination via lost wages, distress at a termination and additional costs, such as travel expenses (mileage), related to a job search.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and the FLSA Collective, pray for the following relief:

A. That, at the earliest possible time, the Plaintiff be allowed to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of Court-supervised notice, to servers/bartenders whom worked for Defendants and as alleged herein this complaint. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join in this lawsuit.

B. Unpaid wages and liquidated damages pursuant to 29 U.S.C. § 201 et seq. and the supporting an Illinois Department of Labor and United States Department of Labor regulations;

C. Unpaid regular wages, and overtime wages pursuant to the IMWL, including repayment of deductions taken from all employees of Defendants.

D. Compensation originating from Defendants company policies, contractual obligations and ERISA requirements owed as a result of unpaid overtime wages;

E. An injunction requiring Defendants to pay all statutorily-required wages pursuant to Illinois Law;

F. 5% per month penalty as allowed under the IWPCA, IMWL and Treble Damages;

G. Certification of this case as a Collective action;

H. Designation of the Plaintiff as representative of the Collective, and counsel of record as Collective Counsel;

I. Issuance of a Declaratory Judgment that the practices complained of in this Complaint are unlawful under Illinois Law, 820 ILCS 105/1 *et seq.* and supporting Illinois Department of Labor regulations and other state wage laws;

J. Attorneys' fees and costs of this action in accordance with FLSA and Illinois Wage Laws; and

K. Attorneys' fees in accordance with all applicable laws, Illinois Law and pursuant to 705 ILCS 225/1;

L. Consequential damages;

M. Issuance of a Declaratory Judgment that the practices complained of in this Complaint are unlawful under Illinois Law, 820 ILCS 105/1 *et seq* and supporting Illinois Department of Labor regulations;.

N. and costs of this action; and

20

O.      Lost wages due to Plaintiff's unlawful termination, as well as any and all applicable retaliation penalties such as liquidated damages, 5%, and treble penalties.

P.      Distress damages due to Plaintiff's unlawful termination.

Q.      Punitive Damages for Defendants' retaliation against the Plaintiff.

R.      Such other relief as this Court shall deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: July 18, 2024

                                        Respectfully submitted,

                              By:           -S-John C. Ireland
                                        John C. Ireland

                                        Attorney for the Plaintiff and Collective

The Law Office Of John C. Ireland
636 Spruce Street
South Elgin ILL
60177
 630-464-9675
Facsimile 630-206-0889              attorneyireland@gmail.com

21