**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MONICA ROGINA, individually and on behalf of all persons similarly situated as members of the Collective as permitted under the Fair Labor Standards Act, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 24 C 7348 |
| CARNIVORE & THE QUEEN LLC, d/b/a CARNIVORE AND THE QUEEN; KELLI LODICO-MATUS; and CHRIS MATUS, as individuals, | ) ) ) ) ) | Judge Sara L. Ellis |
| Defendants. | ) ) | |

**OPINION AND ORDER**

Plaintiff Monica Rogina worked as a server at Carnivore & the Queen LLC ("Carnivore & the Queen") from late January to mid-September 2023. After Carnivore & the Queen terminated her position, Rogina brought this lawsuit against Carnivore & the Queen and its two owners—Kelli Lodico-Matus and Chris Matus (the "Individual Defendants")—for unpaid tips and retaliation in violation of the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat. 105/1 *et seq.*, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115/9. The parties have now filed separate motions for partial summary judgment.

The Court grants in part and denies in part Rogina's motion for summary judgment. Because Defendants fail to respond to Rogina's arguments for summary judgment on enterprise and individual FLSA coverage, the IMWL's applicability to Defendants, and the Individual Defendants' status as employers under the FLSA and IMWL, the Court grants Rogina's motion

on these issues.  But because genuine factual disputes exist regarding Rogina's IWCPA claim, the Court allows this claim to proceed to trial.  The Court also denies Defendants' motion for summary judgment because they either do not sufficiently support their arguments or factual disputes preclude such a finding.

## BACKGROUND

### I.      Rogina's Motion to Strike

The Court first addresses Rogina's motion to strike Defendants' separate statement of material facts.  Rogina argues that by filing a separate statement of material facts instead of including such statements in their response, Defendants violated this Court's summary judgment procedures.  Indeed, this Court's summary judgment procedures differ from Local Rule 56.1, in that this Court requires the parties to submit a joint statement of undisputed facts and the party opposing summary judgment to submit additional facts it contends demonstrate a genuine issue of material fact in its response, not in a separate statement.  Judge Sara L. Ellis, Case Procedures, Summary Judgment Practice, https://www.ilnd.uscourts.gov/judge-info.aspx?VyU/OurKKJRDT +FUM5tZmA==; *see Sweatt v. Union Pac. R.R. Co.*, 796 F.3d 701, 711–12 (7th Cir. 2015) (affirming this Court's summary judgment procedures).

By using a separate statement to set out their disputed facts, Defendants technically violated the Court's summary judgment procedures.  But the Court nonetheless accepts Defendants' separate filing, given that Rogina responded to these additional allegedly disputed facts in her reply brief and cannot show any prejudice arising from Defendants' use of a separate statement and then incorporating facts from that statement into their response.  The Court notes, however, that many of the statements in Defendants' separate statement of disputed facts, when stripped of argument, do not appear contested and so should have been included in the parties'

joint statement. *See* Judge Ellis, Summary Judgment Practice ("The parties may not file . . .

separate statements of undisputed facts."); *Chi. Studio Rental, Inc. v. Ill. Dep't of Com.*, 940 F.3d

971, 981–82 (7th Cir. 2019) (this Court did not abuse its discretion in striking a party's statement

of additional facts for noncompliance where the additional facts were undisputed and could have

been included in the parties' joint statement of undisputed facts). While the Court overlooks

these violations in the interest of resolving the parties' arguments on their merits, it expects that

the parties will fully comply with the Court's procedures going forward.

## II.     Factual Overview[1]

Carnivore & the Queen is a restaurant owned and operated by Chris Matus and Kelli

Lodico-Matus. Carnivore & the Queen regularly employs more than four employees engaged in

commerce and has sales of at least $500,000 per year. Matus and Lodico-Matus maintain the

ultimate decision-making authority for Carnivore & the Queen employees' wage and tip

payments, oversee payroll, and exercise the day-to-day control of Carnivore & the Queen's

operations and employees. They also have the power to hire, fire, and discipline employees, and

at times exercised these powers.

Rogina worked at Carnivore & the Queen from January 26, 2023 to September 16, 2023

as a server. She sold products to customers that traveled in commerce, including food and

---

[1] The Court derives the facts in this section from the parties' Statements of Uncontested Material Facts, Docs. 39, 41, and additional facts that the parties submitted in their briefs that are supported with citations to admissible evidence from the record, *see Albrechtsen v. Bd. of Regents*, 309 F.3d 433, 436 (7th Cir. 2002) ("Courts are entitled to assistance from counsel, and an invitation to search without guidance is no more useful than a litigant's request to a district court at the summary judgment stage to paw through the assembled discovery material. Judges are not like pigs, hunting for truffles buried in the record." (citation omitted) (internal quotation marks omitted)); *Tindle v. Pulte Home Corp.*, 607 F.3d 494, 496 (7th Cir. 2010) (non-moving party "must come forward with admissible evidence that demonstrates there are genuine issues of material fact to survive [moving party's] summary judgment motion"). The Court, therefore, has included in this background section only those portions of the statements and responses that are appropriately presented, supported, and relevant to resolution of the pending motions for summary judgment. For purposes of Rogina's motion, the Court takes the facts in the light most favorable to Defendants. For purposes of Defendants' motion, the Court takes the facts in the light most favorable to Rogina.

drinks, and processed credit card payments. She was a non-exempt hourly employee who earned $7.80 per hour plus tips. When first hired, Rogina understood and agreed to participate in Carnivore & the Queen's 4% tip out program. This program distributed 4% of Rogina's gross sales to the hosts and bartenders. Defendants paid Rogina with a single check that merged her hourly wage and tips. Rogina did not receive a statement, listing, or any description of "what was being paid" with her check. Doc. 39 ¶ 24. But Defendants contend that Matus provided "a handwritten statement explaining the tips earned, the tip outs paid to bartenders and hosts under the Carnivore and the Queen LLC tip out program, and the net pay" with each paycheck. Doc. 39-6 ¶ 10. Rogina received a weekly "business check," not a "payroll check," the Saturday after the end of a pay period, although some weeks she did not receive a check. *Id.* ¶ 25. Defendants state that any missing checks reflected weeks where Rogina "did not work at all and was not entitled to any paycheck." *Id.* ¶ 66.

Carnivore & the Queen maintains a Square Point of Sale system ("Square POS"). The Square POS electronically maintains all orders entered by staff, including all food and beverage orders and all tips for servers. The Square POS contained all orders and tips earned by Rogina during her employment at Carnivore & the Queen. When a table paid its bill in cash, Rogina gave Carnivore & the Queen the cash amount that covered the table's bill but kept any additional cash as her tip. According to Defendants' records, Rogina took home $4,646.62 in cash tips. Rogina did not keep a record of her cash tips and does not know the amount of cash tips that she took home during her employment. Rogina nonetheless estimates that Defendants stole $5,400 in credit card tips from her. She bases this estimate on information viewed in Defendants' Square POS.

Carnivore & the Queen used a reservation system called Tock. Carnivore & the Queen required parties with six or more people to put down a deposit to make a reservation through Tock. If the party showed up for its reservation, then Carnivore & the Queen reduced the party's bill by the deposit amount. On one occasion, Rogina served a party of six or more people who had put down a deposit, and she mistakenly forgot to reduce the party's bill by the deposit amount. Rogina did not learn of this mistake, however, until September 18, 2023, when Lodico-Matus forwarded Rogina an email chain from the guest who put this deposit down and who was upset about Rogina failing to reduce the party's bill by the deposit amount.[2]

On August 26, Rogina asked Matus a question about her perceived wage and tip discrepancies in-person on the restaurant's patio. She asked for Carnivore & the Queen's tip records but did not receive these records. After this exchange, Defendants reduced her schedule and shifts and started treating her negatively. On September 16, Rogina worked her last shift at Carnivore & the Queen.

On September 18, Matus texted Rogina to schedule a phone meeting. Rogina believed that Matus wanted to fire her in this meeting and so asked for an in-person meeting. Matus did not respond to this request. On September 20, Rogina texted Defendants for her net payment amounts for each pay period beginning in February 2023. Defendants did not provide this documentation. Sometime after this date, Defendants terminated Rogina's employment.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to

---

[2] Neither party states the date on which this mistake happened.

interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013). However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture,'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted). The same standard applies when considering cross-motions for summary judgment. *Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002). Therefore, when considering Rogina's motion for summary judgment, the Court views all evidence in the light most favorable to Defendants, and when considering Defendants' motions for summary judgment, the Court views all evidence in the light most favorable to Rogina. *Id.*

6

## ANALYSIS

**I.      Rogina's Motion for Summary Judgment**

Rogina first requests that this Court determine that she has established: (1) enterprise and individual FLSA coverage; (2) that Defendants are subject to the IMWL; and (3) that the Individual Defendants are employers under the FLSA and IMWL.  Defendants do not respond to any of these arguments, and "[w]hen a party does not respond to an argument[,] it is deemed waived." *Hartford Underwriters Ins. Co. v. Worldwide Transp. Shipping Co.*, 313 F. Supp. 3d 919, 925 (N.D. Ill. 2018); *see also C & N Corp. v. Kane*, 756 F.3d 1024, 1026 (7th Cir. 2014) (finding that a nonmovant's failure to make an argument in response to a summary judgment motion constituted a waiver of that argument).

Rogina next requests judgment on her IWPCA claim.  She specifically asks the Court to determine that Defendants violated the IWPCA by not paying her credit card tips within thirteen days of the end of her work week.  The IWPCA requires that "[a]ll wages earned by an employee during a semi-monthly or biweekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned."  820 Ill. Comp. Stat. 115/4.

Rogina explains that Defendants paid her hourly wage and earned tips in a single check. Rogina attaches her own declaration, detailing Defendants' payments issued to her over the months she worked at Carnivore & the Queen, and Defendants' business records and checks. She contends that these checks and business records demonstrate that Defendants violated the IWPCA's thirteen-day rule.

Defendants respond by contending that Rogina bases her motion on a "preliminary summary report" produced by Defendants before Rogina filed this lawsuit.  Doc. 43 at 1.

Defendants contend that they subsequently produced more detailed and accurate information in discovery, including Rogina's daily shift reports, payments, and checks, which show that Defendants timely paid Rogina her earned wages and tips. Defendants state that the summary report on which Rogina relies when moving for summary judgment did not consider Defendants' 4% tip out program, nor the fact that Defendants required Rogina to share her tips for her first shifts with the server training her. Defendants claim that the discrepancy between the summary report on which Rogina relies and the business records on which Defendants rely in response create a genuine issue of material fact, requiring this Court to deny summary judgment on Rogina's IWPCA claim.

The Court notes that the summary judgment materials submitted by both parties in this case are disorganized and difficult to parse. Each party relies on pages of business records, including photocopied checks, untitled spreadsheets, and handwritten accounting notes, to support their arguments. But neither party points the Court to any evidence that definitively resolves whether Defendants timely paid Rogina under the IWPCA. While all records discuss the same pay periods, the amount owed to Rogina fluctuates—and neither party definitively explains why. For example, the parties disagree on whether the summary report on which Rogina relies considers Defendants' 4% tip out program. Rogina asserts that the spreadsheet she attaches to her motion includes the 4% tip out program in its payment amount calculations because Defendants titled one column "Tips Earned After Tip Out." Doc. 39-3. But Defendants assert that the spreadsheet, which they created and updated each pay period, "did not take into account the 4% tip out program and the fact that [Rogina]'s first shifts were training shifts in which the tips [she] earned were shared by the server training [her]." Doc. 43 at 2. As another example, Defendants contend that Rogina missed weeks of work and therefore Defendants did

8

write her a check for each pay period. But Rogina asserts that Defendants simply failed to pay her for multiple weeks without reason. Based on these representations, it is not the Court's place to pick which side it believes. *See Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) ("At summary judgment a court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence[.]" (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986))). These factual disputes preclude summary judgment. The Court therefore denies Rogina's motion on her IWCPA claim.

## II. Defendants' Motion for Summary Judgment

Defendants seek summary judgment on three issues, which they assert are central to all six of Rogina's claims: (1) whether Defendants stole Rogina's charged tips; (2) whether Defendants double dipped and stole Rogina's cash tips by claiming that Rogina retained cash from tables; and (3) whether Defendants fired Rogina in retaliation for complaining about stolen tips.

### A. Charged Tip Amount

Defendants first argue that the Court should grant them summary judgment because Rogina has not established the dollar amount of tips that she earned when working as a server at Carnivore & the Queen, which Defendants frame as a threshold requirement for her various wage-based claims. Defendants assert that they have provided Rogina with all her daily shift reports and paychecks, and therefore Rogina's "estimate" that she earned $5,400 in tips is insufficient.

In support of this argument, Defendants cite only one case: *Liu v. T & H Machine, Inc.*, 191 F.3d 790 (7th Cir. 1999). The Court notes the *Liu* case concerns the Illinois Sales Representative Act, 820 Ill. Comp. Stat. 120/1 *et seq.*, and unpaid commissions, not any of the

wage statutes under which Rogina brings her claims for unpaid tips.  And upon closer review, *Liu* does not support the proposition for which Defendants cite it and, more concerningly, its holdings and reasoning have no relation to this case.  True, *Liu* states that a non-moving party must present more than mere speculation or conjecture to defeat a summary judgment motion, but the Seventh Circuit's subsequent analysis focuses on the validity of reassignments—not any requirement that a plaintiff establish the dollar value of tips she alleges a defendant stole.  *Id.* at 796–98.  Defendants' first argument for summary judgment, therefore, is unsupported by any pertinent authority.  *See U.S. v. Elst*, 579 F.3d 740, 747 (7th Cir. 2009) ("[A]rguments unsupported by pertinent authority are waived.").

Further, Rogina does provide amounts for which she believes Defendants underpaid her, even if Defendants contest these amounts.  *See* Doc. 39 ¶¶ 27–65.  And importantly, Rogina contends that her inability to calculate a specific stolen tip amount results from Defendants' deficient recordkeeping.  *See Brown v. Family Dollar Store of Ind., LP*, 534 F.3d 593, 595 (7th Cir. 2008) ("To place the burden on the employee of proving damages with specificity would defeat the purpose of the FLSA where the employer's own actions in keeping inadequate or inaccurate records had made the best evidence of such damages unavailable.").

Because Defendants have not adequately supported their argument that Rogina must establish the specific dollar amount of allegedly stolen tips to proceed on her wage-based claims, the Court denies Defendants summary judgment on this issue.

### B.      Cash Tips Double-Dipping

Defendants next argue that the Court should grant them summary judgment on whether Defendants double-dipped on Rogina's cash tips because (1) Rogina testified at her deposition that she did not know what double dipping meant, and (2) Rogina took home her cash tips,

meaning Defendants did not engage in theft. The Court notes that Defendants' argument on these two points consists of four total sentences.

### 1. Rogina's Testimony

Rogina stated at her deposition that she did not know or remember what "double dipping" means. Doc. 42 at 9–10. But in response, Rogina submits a supplemental declaration explaining that she has refreshed her recollection on double dipping.

"As a general rule . . . this circuit does not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony." *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996); *see also Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996) ("We have long followed the rule that parties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions."). But a party may submit a supplemental affidavit "to clarify ambiguous or confusing deposition testimony." *Buckner*, 75 F.3d at 292. The Court here finds it appropriate to consider Rogina's declaration as a clarification to her ambiguous answer regarding double dipping because "[f]ew honest witnesses testify at any length without at least occasional lapses of memory or needs for correction or clarification." *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 571 (7th Cir. 2015). As the Seventh Circuit has explained, "[d]isregarding as a sham every correction of a memory failure or variation in a witness's testimony requires far too much from lay witnesses and would usurp the trier of fact's role in determining which portion of the testimony was most accurate and reliable." *Id.* at 571–72.

Even if the Court rejected Rogina's supplemental declaration, Defendants still have not carried their initial burden to entitle them to summary judgment on this issue. Defendants argue

11

that, if the Court ignores Rogina's supplemental declaration, then her memory lapse defeats her double dipping claim. But Rogina's double dipping claim depends less on her ability to define double dipping and more on her ability to prove that she performed work for which she was inadequately compensated. And, as explained below, Defendants do not sufficiently argue that Rogina has failed to carry her burden.

### 2. Rogina's Cash Tips

Defendants' next argument states only: "Plaintiff received and took home $4,646.62 in cash tips, not cash from the entire cash table transactions. Plaintiff's claim that Defendants stole tips by double dipping must fail at the Summary Judgment stage." Doc. 40 at 8. Defendants do not further explain their argument and do not point to any factual or legal support.

By making their argument in two sentences, Defendants fail to support this summary judgment assertion with facts or authority. It is not the Court's job to "scour the record and attempt to decipher what [Defendants'] factual and legal arguments on this issue might be." *Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers Union No. 63 v. Glaziers, Architectural Metal & Glass Workers Loc. Union No. 27*, 40 F. Supp. 2d 997, 1004 (N.D. Ill. 1999). Rather, it is "[a]n advocate's job . . . to make it easy for the court to rule in his client's favor." *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 613 (7th Cir. 2006). Defendants may ultimately succeed in defeating Rogina's double dipping claim, but because they have failed to adequately support their motion for summary judgment on this issue, the claim may proceed to trial. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) (making clear that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

### C.        Retaliation

Defendants first argue that because Rogina's underlying tip theft claims fail, so too must her retaliation claims.  But as described above, Defendants have failed to present adequate argument or evidence to defeat Rogina's tip theft claims, and so Defendants cannot base their retaliation argument on this unsuccessful theory.

Defendants separately contend that they had legitimate cause to terminate Rogina's employment: a single admitted reservation fee error.  Doc. 40 at 8–9.  The Court notes that Defendants' argument on this issue is only three sentences and yet again without any citations to the factual record or relevant legal authority.  As explained above, the Court may deny Defendants' summary judgment motion for this reason alone.  *See Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) ("Neither the district court nor this court are obliged to research and construct legal arguments for parties, especially when they are represented by counsel."); *Berkowitz*, 927 F.2d at 1384 (making clear that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

But even considering Defendants' argument, a factual issue precludes summary judgment.  It is undisputed that Rogina complained about her tips and wages and that shortly thereafter Defendants reduced her hours and then fired her.  But it is also undisputed that Rogina forgot to deduct a customer's reservation fee from their final bill one time during her eight-month employment.  While such a mistake may justify termination, "a jury could also reasonably believe th[is] alleged justification[ ] [is] pretextual." *Mays v. Rubiano, Inc.*, 560 F. Supp. 3d 1230, 1241 (N.D. Ind. 2021).  Neither party states the date on which Rogina forgot to deduct the customer's reservation fee from the final bill.  But the suspicious timing of Rogina's tips and wages complaints and her subsequent termination, without any stated reason, allows a jury to

13

potentially find Defendants' justification to be dishonest. *See Sanchez v. Henderson*, 188 F.3d 740, 746 (7th Cir. 1999) (plaintiff may establish pretext with evidence suggesting retaliation "was the most likely motive for the termination"). The Court therefore denies Defendants' summary judgment motion on Rogina's retaliation claims.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Rogina's motion for partial summary judgment [37]. The Court finds that Rogina has established enterprise and individual FLSA coverage, that Defendants are subject to the IMWL, and that Kelli Lodico-Matus and Chris Matus are employers under the FLSA and IMWL. The Court denies Defendants' partial motion for summary judgment [40].

Dated: June 9, 2026

_____
SARA L. ELLIS
United States District Judge

14